**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)**

| | | |
|---|---|---|
| IN RE: | : | |
| **JESSICA T GUSLER** | : | BK. No. 19-13153-jkf |
| **Debtor** | : | |
| | : | **Chapter No. 13** |
| **FREEDOM MORTGAGE CORPORATION** | : | |
| **Movant** | : | |
| **v.** | : | |
| **JESSICA T GUSLER** | : | |
| **RYAN COUPE (Non-filing Co-Debtor)** | : | **11 U.S.C. §362 AND §1301** |
| **Respondents** | : | |

**MOTION OF FREEDOM MORTGAGE CORPORATION FOR RELIEF FROM**
**AUTOMATIC STAY UNDER §362 AND CO-DEBTOR STAY UNDER §1301 PURSUANT**
**TO BANKRUPTCY PROCEDURE RULE 4001**

Movant, by its attorneys, PHELAN HALLINAN DIAMOND & JONES, LLP, hereby

requests a termination of Automatic Stay and Co-Debtor Stay and leave to foreclose on its mortgage

on real property owned by Debtor, JESSICA T GUSLER AKA JESSICA GUSLER and Non-Filing

Co-Debtor, RYAN COUPE.

1.      Movant is **FREEDOM MORTGAGE CORPORATION.**

2.      Debtor, JESSICA T GUSLER AKA JESSICA GUSLER and Non-Filing Co-

Debtor, RYAN COUPE are the owners of the premises located at **25 SCARLET AVE, ASTON, PA**

**19014-2905**, hereinafter known as the mortgaged premises.

3.      Movant is the holder of a mortgage on the mortgaged premises.

4.      Debtor's failure to tender monthly payments in a manner consistent with the

terms of the Mortgage and Note result in a lack of adequate protection.

5.      Movant wishes to institute foreclosure proceedings on the mortgage because of

Debtor's failure to make the monthly payment required hereunder.

6.      The foreclosure proceedings to be instituted were stayed by the filing of the

instant Chapter 13 Petition.

7.      As of December 9, 2019, Debtor has failed to tender post-petition mortgage

payments for the months of September 2019 through December 2019.  The monthly payment amount

for the months of September 2019 through November 2019 is $1,062.84, payment amount for the

payment amount for the month of December 2019 is $1,086.30, less suspense in the amount of $60.03, for a total amount due of $4,214.79.  The next payment is due on or before January 1, 2020 in the amount of $1,086.30.  Under the terms of the Note and Mortgage, Debtor has a continuing obligation to remain current post-petition and failure to do so results in a lack of adequate protection to Movant.

8.      Movant, **FREEDOM MORTGAGE CORPORATION,** requests the Court award reimbursement in the amount of $1,031.00 for the legal fees and costs associated with this Motion.

9.      Movant additionally seeks relief from the co-debtor stay under §1301 (c) (if applicable) in the instant case, as the continuation of the co-debtor stay causes irreparable harm to the Movant. Movant may be barred from moving forward with its state court rights under the terms of the mortgage without relief from the co-debtor stay.

10.     Movant has cause to have the Automatic Stay terminated as to permit Movant to complete foreclosure on its mortgage.

11.     Movant specifically requests permission from the Honorable Court to communicate with Debtor and Debtor's counsel to the extent necessary to comply with applicable nonbankruptcy law.

12.     Movant requests that if relief is granted that Federal Rule of Bankruptcy Procedure 3002.1 be waived.

**WHEREFORE**, Movant respectfully requests that this Court enter an Order;

a.      Modifying the Automatic Stay and Co-Debtor Stay under Section 362 and 1301 with respect to **25 SCARLET AVE, ASTON, PA 19014-2905** (as more fully set forth in the legal description attached to the Mortgage of record granted against the Premises), as to allow Movant, its successors and assignees, to proceed with its rights under the terms of said Mortgage; and

b.      That relief from any Co-Debtor Stay (if applicable) is hereby granted; and

c.      Movant specifically requests permission from this Honorable Court to communicate with Debtor and Debtor's counsel to the extent necessary to comply with applicable

nonbankruptcy law; and

    d.      Waiving Federal Rule of Bankruptcy Procedure 3002.1; and

    e.      Granting any other relief that this Court deems equitable and just.

/s/ Thomas Song, Esquire
Thomas Song, Esq., Id. No.89834
Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Phone Number: 215-563-7000 Ext 31387
Fax Number: 215-568-7616
Email: Thomas.Song@phelanhallinan.com

December 12, 2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

| | | |
|---|---|---|
| IN RE: | : | |
| **JESSICA T GUSLER** | : | **BK. No. 19-13153-jkf** |
| **Debtor** | : | |
| | : | **Chapter No. 13** |
| **FREEDOM MORTGAGE CORPORATION** | : | |
| **Movant** | : | |
| **v.** | : | |
| **JESSICA T GUSLER** | : | |
| **RYAN COUPE (Non-filing Co-Debtor)** | : | **11 U.S.C. §362 AND §1301** |
| **Respondents** | : | |

## ORDER MODIFYING §362 AUTOMATIC STAY AND §1301 CO-DEBTOR STAY

    **AND NOW**, this    day of    , 2019, at **PHILADELPHIA**, upon Motion of **FREEDOM MORTGAGE CORPORATION** (Movant), it is:

    **ORDERED AND DECREED:** that Movant shall be permitted to reasonably communicate with Debtor(s) and Debtor's counsel to the extent necessary to comply with applicable nonbankruptcy law; and it is further;

    **ORDERED** that Relief from the Automatic stay and Co-Debtor Stay of all proceedings, as provided under 11 U.S.C. §362 and §1301 is granted with respect to, 25 SCARLET AVE, ASTON, PA 19014-2905 (hereinafter the Premises) (as more fully set forth in the legal description attached to the Mortgage of record granted against the Premises), as to allow Movant, its successors or assignees, to proceed with its rights under the terms of said Mortgage; and it is further;

    **ORDERED** that relief from any Co-Debtor Stay (if applicable) is hereby granted; and it is further;

    **ORDERED** that FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1 is no longer applicable to Movant, its successors or assignees.

 

_____
JEAN K. FITZSIMON, BANKRUPTCY JUDGE

| | |
|---|---|
| SCOTT F. WATERMAN (CHAPTER 13) | RYAN COUPE |
| CHAPTER 13 TRUSTEE | 25 SCARLET AVE |
| 2901 ST. LAWRENCE AVE. | ASTON, PA 19014-2905 |
| SUITE 100 | |
| READING, PA 19606 | JESSICA T GUSLER |
| | 25 SCARLET AVE |
| JEANNE MARIE CELLA | ASTON, PA 19014 |
| JEANNE MARIE CELLA AND | |
| ASSOCIATES, LLC | JESSICA T GUSLER |
| 215 N OLIVE ST, STE 101 | 25 SCARLET AVE |
| MEDIA, PA 19063 | ASTON, PA 19014-2905 |
| | |
| UNITED STATES TRUSTEE | |
| OFFICE OF THE U.S. TRUSTEE | |
| 200 CHESTNUT STREET | |
| SUITE 502 | |
| PHILADELPHIA, PA 19106 | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)**

| | | |
|---|---|---|
| IN RE: | : | |
| **JESSICA T GUSLER** | : | **BK. No. 19-13153-jkf** |
| Debtor | : | |
| | : | **Chapter No. 13** |
| **FREEDOM MORTGAGE CORPORATION** | : | |
| Movant | : | |
| v. | : | |
| **JESSICA T GUSLER** | : | |
| **RYAN COUPE (Non-filing Co-Debtor)** | : | **11 U.S.C. §362 AND §1301** |
| Respondents | : | |

## CERTIFICATE OF SERVICE

I hereby certify that service upon all interested parties, indicated below was made by sending true and correct copies of the Motion of **FREEDOM MORTGAGE CORPORATION** for Relief from the Automatic Stay and Notice of Hearing by electronic means on December 18, 2019.

SCOTT F. WATERMAN (CHAPTER 13)
CHAPTER 13 TRUSTEE
2901 ST. LAWRENCE AVE.
SUITE 100
READING, PA 19606

JEANNE MARIE CELLA
JEANNE MARIE CELLA AND ASSOCIATES,
LLC
215 N OLIVE ST, STE 101
MEDIA, PA 19063

UNITED STATES TRUSTEE
OFFICE OF THE U.S. TRUSTEE
200 CHESTNUT STREET
SUITE 502
PHILADELPHIA, PA 19106

RYAN COUPE
25 SCARLET AVE
ASTON, PA 19014-2905

JESSICA T GUSLER
25 SCARLET AVE
ASTON, PA 19014

JESSICA T GUSLER
25 SCARLET AVE
ASTON, PA 19014-2905

/s/ Thomas Song, Esquire
Thomas Song, Esq., Id. No.89834
Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Phone Number: 215-563-7000 Ext 31387
Fax Number: 215-568-7616
Email: Thomas.Song@phelanhallinan.com

December 18, 2019

V1  WBCD LOAN

FHA Case No.

**Multistate**

# NOTE

DECEMBER 23, 2009                    ASTON,                                PENNSYLVANIA
[Date]                               [City]                                    [State]

25 SCARLET AVE, ASTON, PA 19014-2905
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **NATIONAL FUTURE MORTGAGE INC, A NEW JERSEY CORPORATION.**

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of **\*\*ONE HUNDRED SIX THOUSAND EIGHT HUNDRED THIRTY SEVEN AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S. **\$106,837.00**   ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND SEVEN-EIGHTHS**          percent (   **4.875%**   ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the       **1ST**          day of each month beginning on   **FEBRUARY 1, 2010.**          Any principal and interest remaining on the      **1ST**          day of **JANUARY, 2040**      will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at
**2 EASTWICK DR
GIBBSBORO, NJ   08026**

or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S.       **\$565.39.**    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]       ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge
☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
(A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of       **15**          calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR**          percent (       **4.000%**   ) of the overdue amount of each payment.

(B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**FHA Multistate Fixed Rate Note - 10/95**
Online Documents, Inc.                          **Page  1  of  2**                          Initials: JG PC
P8700NOT  0804
12-22-2009  13:41

ORIGINAL NOTE-1

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
JESSICA GUSLER

_____ (Seal)
RYAN COUPE

PAY TO THE ORDER OF
Flagstar Bank, FSB
WITHOUT RECOURSE

National Future Mortgage Inc

By: _Valerie K. Wilton_
Valerie K. Wilton
Authorized Signatory

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

NATIONAL FUTURE MORTGAGE INC

BY: _____

PRINTED NAME: _____

ITS: _____

NOTE ENDORSEMENT VOID

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.

P8700NOT   0804
12-22-2009 13:41

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY:
JEAN R. GARRISON, SENIOR VICE PRESIDENT

BY:
JOHN P. MALECKI, FIRST VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
FLAGSTAR BANK, FSB
BY:
NELI DANNEN
VICE PRESIDENT

ORIGINAL NOTE 1

RD BK04688-2252                              MG-MORTGAGE

2010003411    01/20/2010 08:45:36 AM:2

RCD FEE: $104.50

After Recording Return To:
FLAGSTAR BANK                                                    DELAWARE
5151 CORPORATE DRIVE                                            COUNTY
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1

Cherry Hill, N.J. 08034

N.R.E.I.S. of N.J., Inc.
401 Route 70 East
Suite 210
Cherry Hill, N.J. 08034

APN #:
APN #:

V1 WBCD LOAN #

————————————————[Space Above This Line For Recording Data]————————————————

Commonwealth of Pennsylvania    **MORTGAGE**    FHA Case No.

MIN:

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 23, 2009.
The Mortgagor is JESSICA T GUSLER AND RYAN COUPE AS TENANTS IN COMMON

("Borrower").
**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474 or P.O. Box 2026,
Flint, Michigan 48501-2026, tel. (888) 679-MERS.

NATIONAL FUTURE MORTGAGE INC, A NEW JERSEY CORPORATION

("Lender") is organized and
existing under the laws of NEW JERSEY,
and has an address of 2 EASTWICK DR, GIBBSBORO, NJ  08026.

Borrower owes Lender the principal sum of ****ONE HUNDRED SIX THOUSAND EIGHT HUNDRED
THIRTY SEVEN AND NO/100********************** Dollars (U.S.  $106,837.00    ).

FHA Pennsylvania Mortgage - 4/96                      Initials: JG RC
Online Documents, Inc.          **Page  1  of  9**    PAEFHADE    PAEFHALD  0806
                                                    12-22-2009 13:41

2010003411 Page: 2252.00

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 1 of 10
Order: jhjhjg Comment:

V1 WBCD LOAN # ███████

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **JANUARY 1, 2040.**        This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in  **DELAWARE**                                      County, Pennsylvania:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
**APN #:**  ████████████

which has the address of **25 SCARLET AVE, ASTON**

                                                                                    [Street, City],

Pennsylvania      **19014-2905**          ("Property Address");
                        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    **1.  Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                        **Page   2   of  9**                Initials: JG RC
                                                                                            PAEFHALD  0606
                                                                                            12-22-2009 13:41

2010003411 Page: 2253.00

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 2 of 10
Order: jhjhjg Comment:

# National

### Real Estate Information Services of NJ

Phone: (856) 429-0371
Toll Free: (888) 263-5872
Fax:
Toll Free: (888) 263-5873

401 Route 70 East   Suite 210   Cherry Hill, NJ 08034



LEGAL DESCRIPTION                          Transmitted: 12/29/2009   16:07

Order Date: 11/09/2009          Order: T009-703993        Customer No: ▓▓▓▓▓

```
For: NATIONAL FUTURE MORTGAGE, INC.        RE: GUSLER, JESSICA
     2 EASTWICK DR., STE 300                   COUPE, RYAN
     GIBBSBORO, NJ 08026                       25 SCARLET AVENUE
Attn: CLAUDIA BRODZIK                          ASTON, PA  19014
JN #:      -NATIO                              DELAWARE COUNTY
```

———————————————— LEGAL DESCRIPTION ————————————————

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF ASTON
IN THE COUNTY OF DELAWARE AND COMMONWEALTH OF PENNSYLVANIA,
BEING DESCRIBED AS FOLLOWS: 02-00-02235-00 PARCELS, AND
BEING MORE FULLY DESCRIBED IN A DEED DATED 07/21/2006 AND
RECORDED 08/02/2006, AMONG THE LAND RECORDS OF THE COUNTY
AND STATE SET FORTH ABOVE, IN DEED VOLUME 3869 AND PAGE
2071.

ADDRESS: 25 SCARLET AVENUE;  ASTON, PA 19014    TAX MAP OR
PARCEL ID NO. ▓▓▓▓▓▓▓▓▓▓▓▓

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the

2010003411 Page: 2255.00

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 4 of 10
Order: jhjhjg Comment:

**v1**

damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    **Page  4  of  9**

Initials: JG PC
PAEFHALD 0806
12-22-2009 13:41

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 5 of 10
Order: jhjhjg Comment:

**V1**

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 8. **Fees.** Lender may collect fees and charges authorized by the Secretary.
 9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

 10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

 11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    **Page  5  of  9**

Initials: _JG  RC_
PAEFHALD  0806
12-22-2009 13:41

_2010003411 Page: 2257.00_

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 6 of 10
Order: jhjhjg Comment:

Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.

**Page   6   of   9**

Initials: JG RC
PAEFHALD  0806
12-22-2009 13:41

Description: Delaware,PA Document - Book.Page 4688.2252 Page: 7 of 10
Order: jhjhjg Comment:

V1 WBCD

However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider        ☐ Growing Equity Rider    ☐ Planned Unit Development Rider
☐ Graduated Payment Rider  ☐ Other(s) [specify]

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                    **Page   7   of   9**

Initials: JG RC
PAEFHALD  0806
12-22-2009 13:41

V1 ▮▮▮▮▮▮▮▮▮▮

   BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
JESSICA GUSLER

_____ (Seal)
RYAN COUPE

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                   **Page  8  of  9**                    PAEFHALD  0806
                                                                              12-22-2009  13:41

V1 WBCD LOA█ ████████

Certificate of Residence

I, _Carol A. Gibson_

do hereby certify that the correct address of the within-named Mortgagee is _2 EASTWICK DR,_
_GIBBSBORO, NJ   08026_

Witness my hand this _23rd_ day of _Dec, 09_

_____
Agent of Mortgage

Commonwealth of **PENNSYLVANIA**
County of **DELAWARE**

On this, the _23_ day of _Dec 2009_, before me, _____,
the undersigned officer, personally appeared

_Jessica Gusler + Ryan Coane_

known to me (or satisfactorily proven) to be the person(s) whose name(s)
_are_ subscribed to the within instrument and acknowledged that
_they_ executed the same for the purposes therein contained.
In witness whereof I hereunto set my hand and official seal.

My commission expires: _____

_____
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CAROL A. GIBSON, Notary Public
Upper Moreland Twp., Montgomery County
My Commission Expires November 29, 2011

FHA Pennsylvania Mortgage - 4/96
Online Documents, Inc.                **Page  9  of 9**                PAEFHALD  0806
                                                                      12-22-2009 13:41

RD BK05488-0416                          AS-ASSIGNMENTS
2014018646    04/29/2014 11:31:30 AM:3
RCD FEE $66.50

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

. PREPARED BY: SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO: SECURITY CONNECTIONS, INC.
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
PH. (208)528-9895
**PENNSYLVANIA**
COUNTY OF DELAWARE

## ASSIGNMENT OF MORTGAGE

KNOWN TO ALL MEN BY THESE PRESENTS, that **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR NATIONAL FUTURE MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS** located at **1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026,** Assignor, for good and valuable consideration, the receipt of which is hereby acknowledged, hereby grants, bargains, assigns, transfers, conveys and sets over unto **FLAGSTAR BANK, FSB** located at **5151 CORPORATE DR., MAIL STOP W-530-1, TROY, MI 48098,** Assignee, its successors and assigns, all of its rights, title and interest in and to that certain Mortgage dated **DECEMBER 23, 2009** executed by **JESSICA T GUSLER AND RYAN COUPE AS TENANTS IN COMMON,** Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR NATIONAL FUTURE MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS,** Original Mortgagee, in the amount of **$106,837.00** recorded in the office of the Register, Clerk, or Recorder of Deeds of DELAWARE County, State of PENNSYLVANIA, in Book **04688** at Page **2252,** more particularly described therein and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**

Property Address: **25 SCARLET AVE ASTON, PA 19014-2905**
**TOWNSHIP of ASTON**
TO HAVE AND HOLD the same unto said Assignee, its successors and assigns to its and their proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **4-7-14**.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Gina Gray
Vice President

STATE OF **Florida**                              COUNTY OF **Duval**                  ) ss.
On **4/7/2014**         , before    me,    **Saundra L. Reed**         , personally    appeared
**Gina Gray**              known to me to be the    **Vice President**    of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Florida              (COMMISSION EXP.  **1/20/2018** )
NOTARY PUBLIC

I do hereby certify that the precise address of the Assignee Residence is:
**FLAGSTAR BANK, FSB, 5151 CORPORATE DR., MAIL STOP W-530-1, TROY, MI 48098**

SAUNDRA L. REED
MY COMMISSION # FF 84293
EXPIRES: January 20, 2018
Bonded Thru Pichard Insurance Agency

Page 1 of 1

MER

RD BK06051-1349
2017046266    08/24/2017 11:25:54 AM
RCD FEE: $78.50                                        AS-ASSIGNMENTS

When Recorded Return To:
·Flagstar Bank, FSB
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number

UPI#:

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FLAGSTAR BANK, FSB, WHOSE ADDRESS IS 5151 CORPORATE DRIVE, TROY, MI 48098,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **FREEDOM MORTGAGE CORPORATION, WHOSE ADDRESS IS 10500 KINCAID DRIVE, STE. 300, FISHERS, IN 46037** (317)537-3558, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage dated 12/23/2009, in the amount of $106,837.00 made by **JESSICA GUSLER AND RYAN COUPE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONAL FUTURE MORTGAGE INC,** recorded on 01/20/2010, in the Office of the Recorder of Deeds of **DELAWARE** County, **Pennsylvania,** in **Book 04688, Page 2252, and/or Document #** .

Mortgage Premise: 25 SCARLET AVE ASTON TOWNSHIP, ASTON, PA 19014.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed in its name by **Daniel Thompson** its VICE PRESIDENT and authorized signer, on __8__ / __14__ /2017 (MM/DD/YYYY).
**FLAGSTAR BANK, FSB**

By: _____
    Daniel Thompson    VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MERS PHONE 1-888-679-6377 MERS
Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ____ / ____/2017 (MM/DD/YYYY), by Daniel Thompson as VICE PRESIDENT of FLAGSTAR BANK, FSB, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Nicole Shields
Notary Public - State of FLORIDA
Commission expires: 08/05/2020

NICOLE SHIELDS
Notary Public – State of Florida
My Comm. Expires August 5, 2020
Commission # GG126925

Assignment of Mortgage from:
**FLAGSTAR BANK, FSB, WHOSE ADDRESS IS 5151 CORPORATE DRIVE, TROY, MI 48098, (ASSIGNOR),**
to:
**FREEDOM MORTGAGE CORPORATION, WHOSE ADDRESS IS 10500 KINCAID DRIVE, STE. 300, FISHERS, IN 46037 (317)537-3558, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: JESSICA GUSLER AND RYAN COUPE

All that certain lot or piece of ground situated in
Mortgage Premise: 25 SCARLET AVE ASTON TOWNSHIP
            ASTON, PA 19014
            DELAWARE (Borough or Township, if stated), Commonwealth of Pennsylvania.
            Being more particularly described in said Mortgage.

I, **Daniel Thompson,** hereby certify that the below information and address for the assignee are correct:
**FREEDOM MORTGAGE CORPORATION, WHOSE ADDRESS IS 10500 KINCAID DRIVE, STE. 300, FISHERS, IN 46037 (317)537-3558, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

By: _____
      **Daniel Thompson   VICE PRESIDENT**
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
MERS PHONE 1-888-679-6377 MERS
Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026